**Robert Louis FARKAS,
Petitioner-Appellant,**

v.

**UNITED STATES of America, United States Parole Commission,
Respondent-Appellee.**

No. 83–1584.

United States Court of Appeals,
Sixth Circuit.

Submitted July 12, 1974.

Decided Sept. 20, 1984.

Robert Louis Farkas, pro se.

Leonard R. Gilman, U.S. Atty., Patricia Reeves, Gary Felder, Asst. U.S. Attys., Detroit, Mich., for respondent-appellee.

Before CONTIE and WELLFORD, Circuit Judges, and KRENZLER, District Judge.*

CONTIE, Circuit Judge.

Robert Louis Farkas, an inmate at the Federal Correctional Institution in Milan, Michigan, appeals from the district court's denial of his *pro se* petition for habeas corpus relief. 28 U.S.C. § 2241. Farkas filed this lawsuit after the United States Parole Commission (Commission) denied his application for parole. We affirm.

I.

On August 21, 1981, Farkas was sentenced to a prison term of five years following his conviction upon a plea of guilty to possession with intent to distribute Phencyclidine (PCP). 21 U.S.C. § 841(a)(1). On January 13, 1981, or approximately five months later, Farkas was afforded an initial parole determination hearing. At this hearing, the panel evaluated petitioner's case under the parole guidelines set forth at 28 C.F.R. § 2.20. The petitioner's presentence report indicated that he was in possession of 2,016.95 grams of PCP, which represented approximately 400,000 dosage units. Accordingly, the panel rated petitioner's offense as "Greatest I" because it involved the possession of more than 200,000 dosage units of PCP with a managerial and/or proprietary interest. *See* 28 C.F.R. § 2.20, Chapter Nine, Subchapter D, § 931(a).

After the panel categorized petitioner's offense, it analyzed petitioner's parole prognosis by using the salient factor scoring device. 28 C.F.R. § 2.20(e). In calculating the salient factor score, petitioner forfeited all possible points allotted under the categories of prior convictions and commitments. 28 C.F.R. § 2.20 (Items A & B). According to the presentence report, petitioner had four prior convictions and two prior commitments. Petitioner received two points for being age 26 or more at the time of the current offense, and one point each for (1) having no prior commitments of more than thirty days during the three-year period prior to the date of the offense, (2) not having the status of parolee or an escapee at the time of the offense, and (3) having no history of heroin or opiate dependence. 28 C.F.R. § 2.20 (Items C, D, E, & F). Petitioner thus had a salient factor score of five (5). Employing the applicable parole guidelines, the panel determined that petitioner should serve between 64–78 months before release based upon his offense severity rating ("Greatest I") and his salient factor score (5). Petitioner was thus informed by the panel that he would not be eligible for parole during his 60-month prison term.

The petitioner appealed this decision to both the Regional Commission and the National Appeals Board. Both these tribunals affirmed the initial parole decision. Thereafter, petitioner filed a habeas corpus petition in federal district court pursuant to 28 U.S.C. § 2241. The district court later denied the petition in a Memorandum Opinion and Order dated August 8, 1983. Petitioner appeals.

II.

■ The petitioner initially contends that the Parole Commission relied upon inaccurate information in reaching its decision. Specifically, the petitioner alleges that the panel relied upon a misstatement by the prosecutor that the petitioner had in his possession nine pounds of PCP, which is approximately double the correct amount. The petitioner also contends that the presentence report inaccurately set forth petitioner's prior conviction and commitment record. We believe, however, that the Commission's factual findings on these points are necessary components of the Commission's ultimate decision to deny parole and are not subject to review by this

* The Honorable Alvin I. Krenzler, United States District Judge for the Northern District of Ohio, sitting by designation.

court.[1]  Under 18 U.S.C. § 4218(d), the Parole Commission's substantive decision to grant or deny parole is an action "committed to agency discretion" under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), and thus is insulated from judicial review.  It is clear, therefore, that Congress intended to commit these substantive decisions to the unreviewable discretion of the Commission.  *See Garcia v. Neagle*, 660 F.2d 983, 987–89 (4th Cir.1981), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982).

This statutory restriction does not, however, preclude this court from considering petitioner's remaining arguments that the parole guidelines themselves violate certain provisions of the Parole Commission and Reorganization Act (PCRA), 18 U.S.C. § 4201 *et seq.*  Such an inquiry into the *legality* of agency action, as opposed to the appropriateness of agency action within legal bounds, is "uniquely appropriate for judicial determination."  *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, 875 (D.C.Cir.1970).

### III.

■ The petitioner argues that the parole guidelines set forth at 28 C.F.R. § 2.20 are contrary to the language and intent of the PCRA.  The PCRA, petitioner explains, "rejects the mechanical determination of offense severity contained in the 'offense severity scale'," and instead "requires that judgments of offense severity be based upon the consideration of the nature and circumstances of the offense."  In a related argument, the petitioner contends that the parole guidelines somehow intrude upon the district court's sentencing function by dictating how much of the sentence the prisoner must actually serve.  "The function of the 'guidelines'," the petitioner argues, "is, in effect, to resentence federal prisoners in accordance with the board's

independent determination of an appropriate length of imprisonment."

Contrary to petitioner's assertions, the PCRA mandates the creation of the parole guidelines.  In 18 U.S.C. § 4203(a)(1), Congress directed the Commission to "promulgate rules and regulations establishing guidelines" for the exercise of its discretionary power to release federal prisoners on parole.  These guidelines are to "serve as a national parole policy which seeks to achieve both equity between individual cases and a uniform measure of justice."  H.R.Rep. No. 94–838, 94th Cong., 1st Sess. 26, *reprinted in* 1976 U.S.Code Cong. & Ad.News 335, 359.  Although the guidelines on their face appear to be mechanical computations, they are in fact "merely guidelines" from which the Commission is free to depart for good cause.  28 C.F.R. § 2.20(c).  Moreover, the Commission is also required to consider, to the extent relevant and available, (1) reports and recommendations by the staff of the facility in which the prisoner is confined, (2) the prisoner's prior criminal record, including earlier probation and parole reports, (3) presentence investigation reports, (4) parole recommendations made at the time of sentence by the sentencing judge and prosecuting attorney, (5) reports on physical, mental, or psychiatric examinations, and (6) any other relevant information concerning the prisoner, including information provided by the prisoner or other interested persons.  *See* 28 C.F.R. § 2.19(a)–(b).  Given the degree of flexibility which has been incorporated into the parole guidelines, we hold that the guidelines fall well within the language and spirit of the PCRA.  *See Priore v. Nelson*, 626 F.2d 211, 215–16 (2d Cir.1980).

■ With regard to petitioner's related argument, the guidelines in no way intrude upon the district judge's sentencing function.  The Commission's parole decisions cannot alter the terms of any judicial-

---

**1.**  The petitioner also argues that (1) he was not in a managerial position in the drug operation, but rather was only a third or fourth level distributor, and (2) the Commission showed bias and favoritism to petitioner's codefendant.

These arguments were not raised before the district court and thus will not be considered by this court.  *See Brown v. Marshall*, 704 F.2d 333, 334 (6th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 120, 78 L.Ed.2d 119 (1983).

**40**

ly-imposed sentence or the penalty provisions of the criminal laws upon which such sentences are based. The guidelines cannot be applied to detain a prisoner beyond his maximum release date or to release him before he first becomes eligible for parole. In short, the Commission is in no way resentencing the petitioner by granting or denying his application for parole.

## IV.

■ The petitioner also contends that the parole guidelines should not be applied to federal prisoners who, like himself, are sentenced under 18 U.S.C. § 4205(b)(2). Under § 4205(b)(2), the sentencing court may specify that the prisoner be released on parole "at such time as the Commission may determine," rather than at the one-third point of the prisoner's sentence. In this context, the petitioner argues that "[t]he intent of Congress … is that individuals sentenced under 4205(b)(2) must be paroled at or before the one-third point in the sentence, unless they fail to positively adjust to prison life."

There is nothing in the text of the PCRA which indicates that the Commission is obligated to apply the parole guidelines differently to prisoners sentenced under § 4205(b)(2) than to prisoners sentenced under 18 U.S.C. § 4205(a) or 18 U.S.C. § 4205(b)(1). Indeed, the PCRA Senate Report points out that while "standards for release on parole … are not significantly changed from existing law," the "only notable change is that the standards and criteria are made the same for all federal prisoners without regard to which of the three main sentencing alternatives is utilized by the court." S.Rep. No. 94–369, 94th Cong., 1st Sess. 18 *reprinted in* 1976 U.S.Code Cong. & Ad.News 335, 339–40; *Moore v. Nelson*, 611 F.2d 434, 437 (2d Cir.1979). The PCRA simply makes (b)(2) prisoners *eligible* for release before the one-third point of their sentences; it does not specify any special considerations that are to apply in determining whether or not to grant the application for parole. *Moore*, 611 F.2d at 437. We therefore reject petitioner's contention that the Commission may not apply its parole guidelines to prisoners who are sentenced under § 4205(b)(2).

## V.

Finally, the petitioner contends that the Commission must consider the length of the prisoner's sentence in assessing his eligibility for parole.

■ We find nothing in the text or legislative history of the PCRA which requires the Commission to consider sentence length in making its parole decision. 18 U.S.C. § 4206(a) establishes the general criteria to be applied by the Commission in making parole decisions, and states as follows:

(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, *upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner*, determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare;

subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

(Emphasis added).

As can be ascertained from the text of § 4206(a), offense severity and offender characteristics (and not sentence length) are the touchstones for the Commission's parole decision. *See Geraghty v. United States Parole Commission*, 719 F.2d 1199, 1207–08 (3d Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984); *Garcia*, 660 F.2d at 991. We therefore hold that the Commission was under no obligation to consider petitioner's sentence length in making its parole decision.

Accordingly, the judgment of the district court is AFFIRMED.