**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  07a0826n.06
Filed:  December 6, 2007

**05-6277**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DANA LAMONT KEY, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  DAUGHTREY and GILMAN, Circuit Judges; EDMUNDS, District Judge.[*]

PER CURIAM.  In this sentencing appeal, defendant Dana Lamont Key challenges the 96-month term of incarceration that he received based upon his guilty plea to a charge of being a felon in possession of a firearm.  Key contends that in imposing sentence, the district court exceeded its authority under 18 U.S.C. § 3661 by relying upon materially untrue evidence, in violation of the defendant's constitutional right to due process.  On review, however, we conclude that the record fails to support this contention. At the sentencing hearing, the district court did not appear to rely upon the disputed comments in determining Key's sentence.  Moreover, the comments were not of sufficient magnitude to establish a due process violation.  We have also reviewed Key's sentence for

---

[*]The Hon. Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

reasonableness under the dictates of United States v. Booker, 543 U.S. 220 (2005), and conclude that the district court imposed a reasonable sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2004, the Chattanooga Police responded to a gun-related disturbance at a home in Chattanooga, Tennessee. The woman who called in the complaint reported the presence of a person with a gun on her porch and described his clothing to the operator. When an officer arrived, the defendant began to run and discarded an object as he ran. After the officer caught the defendant and arrested him, he returned to the location where the object landed and found a loaded gun. The officer returned to the home of the caller, where the caller gave him permission to enter. Inside the house, he found another gun. The caller told the officer that the backpack containing the gun belonged to the defendant.

The grand jury charged Key with knowingly possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In light of Key's prior felony convictions, the prosecutor sought to enhance his sentence pursuant to U.S.S.G. § 2K2.1(a)(4)(A). After accepting Key's guilty plea, the district court sentenced him to 96 months, which is the maximum sentence in the guideline range of 77-96 months found applicable by the probation office. In doing so, the district judge indicated that he was considering an upward departure from that range in light of Key's extensive criminal background, pointing to the seriousness of Key's past conduct and his likely recidivism. He then gave the defendant and his attorney the opportunity to speak, specifically inviting them to comment

on the propriety of the proposed upward departure. Key's attorney spoke first, noting that

the guideline range calculated under the sentencing guidelines already accounted for the

bulk of Key's prior criminal history through his base offense level. The defendant

subsequently spoke on his own behalf, asking the court to be lenient because he was

unlikely to recidivate in light of his increasing maturity. Responding to this claim, the district

court made the following observations:

> Mr. Key, it now falls on the shoulders of this Court to impose a sentence on you. As you stand here in court today, you have something that is behind you that's attached to you. It's not visible to most people, but it is there nevertheless, and it is your past. It goes with you wherever you go, and it influences what you do. That past is not a good past. You have 24 criminal history points. That's almost double the points necessary to get in the highest category. The Court has considered an upward departure in your case. The Court was actually considering a sentence at the statutory maximum, which is 120 months. But the Court has decided to stay within the guideline range in this case.

> From your statement and your background, it is obvious that you are an intelligent person. You have [been to] college. Very, very few defendants who stand before this Court charged with what you are charged with even finished high school. You not only finished high school, you went on to college. And from the statement you just made to the Court, it is evident that you are a very intelligent person. So the Court has someone with intelligence, someone who has talent, someone who could be doing things, with this type of background, and we have to ask ourselves how and why.

> There are two possibilities the Court would like to offer. One is that you have this history because you are a crack cocaine addict. When people become involved with drugs, the natural person disappears, and the drug person takes their place. The drug person is irresponsible, could care less about other people, could care less about the laws of society, could care less about the person. The only thing the drug person cares about is getting more

drugs. They will commit crimes, they will deceive people, they will do all kinds of things, just to get that next drug fix. That's a possibility.

The other possibility is that because you are young your hormones are still raging. Some of us, especially young men, have problems with our hormones when we're young, and we like to be rebellious, we like to cast off authority, and we like to do things that get us in trouble. You are 31 years old, so you are still young.

It may be there is some other reason to explain your background; I don't know. My source of information is just what I see in this presentence report and what you have told me as you stand here. But I don't think there is any reason to believe that you are in a position at this point to reform yourself. If the problem is your age and your hormones, those hormones are still going to be acting on you for at least the next 10 or 15 years. If the problem is a drug problem, you have been free of drugs since you have been in jail, so the natural Dana Lamont [K]ey is talking to me, but as soon as you get back on drugs again, the drug fiend is going to be in your body controlling your actions. So that's also not a reason for the Court to exercise leniency.

The judge then expressly discussed the various section 3553(a) factors before sentencing Key to a term of 96 months. It is this sentence that the defendant now appeals.

## **DISCUSSION**

Key asserts that the district court exceeded its discretionary authority under section 3661 by relying on "untrue facts" regarding the state of his hormones and that this error violated his due process rights. In support of this theory, Key cites nonlegal sources that purport to refute the district judge's statements that a 31-year-old man may still be under the influence of "raging hormones" for another 10 to 15 years. Key thus argues that the

district court introduced misinformation at the sentencing hearing and then relied upon that information, rendering the resulting sentence constitutionally defective.

In this regard, the defendant relies on the Supreme Court's holding in Townsend v. Burke, 334 U.S. 736 (1948). There, the district court sentenced Townsend following the recitation of a deliberately inaccurate criminal history by an officer of the court, who testified that Townsend had been convicted on certain criminal charges, some of which had actually been dismissed or had resulted in acquittal. See id. at 739-41. The Supreme Court held the sentence to be constitutionally defective and violative of Townsend's right to due process because it was based on an "extensively and materially" false foundation that the defendant had no opportunity to correct. See id. at 741. Notably, it was not the mere presence of misinformation but the sentencing court's reliance upon this information that rendered the sentence defective. See id.

An examination of United States v. Tucker, 404 U.S. 443 (1972), is also helpful in reviewing Key's claims. In Tucker, the Supreme Court considered a case in which the sentencing judge had relied upon two defective prior convictions in imposing a heightened sentence due to past criminal history. Tucker's previous convictions, subsequently found unconstitutional under Gideon v. Wainwright, 372 U.S. 335 (1963), likely caused the district court "to impose a heavier sentence than it otherwise would have imposed." Tucker, 404 U.S. at 445-46. The Supreme Court found that Tucker's sentence was "founded at least

in part upon misinformation of constitutional magnitude," id. at 447, and therefore held that his case merited a remand for re-sentencing. See id. at 449.

We need not decide whether the district court's extemporaneous comments regarding Key's hormones were of comparable constitutional magnitude to those present in Townsend and Tucker because the record does not reflect that the district court relied upon the disputed statements in imposing Key's sentence. The fact that the sentencing court indicated its consideration of an upward departure, listened to Key's request for leniency, and made the disputed statements, yet opted to sentence *within* the guideline range, militates against Key's claim that the court relied on those statements in imposing his sentence. Even though the district court disagreed with Key's claim of maturity, it did not actually impose an upward departure, which it might have done if acting in reliance on a mistaken belief about the defendant's hormone-based impetuosity. Instead, the court appeared to be swayed by the arguments presented by the defendant and his attorney to forego an increased sentence. Given that the sentencing court did not in fact depart from the applicable sentencing range, we conclude that the court's extemporaneous observations regarding Key's maturity – or lack thereof – did not affect the court's ultimate decision to impose a 96-month sentence. Key's claim that the district court was influenced by material inaccuracies and, therefore, violated his due process rights is simply unfounded.

Additionally, the sentencing court's statements were obviously made in response to Key's argument for leniency. That the district judge offered personalized sentencing remarks directly to the defendant is consistent with our past statement in support of such a practice. See United States v. Collington, 461 F.3d 805, 810 n.3 (6th Cir. 2006) ("What may be overlooked in appellate review is the fact that the district court does not issue its sentencing remarks in a vacuum or exclusively with this Court's review in mind . . . . We should not begin persecuting the district courts for any niceties they may state in communicating its sentence to the defendant.").

Nor do we agree with Key's claim that the sentencing court erred in considering sentencing factors not authorized by section 3661. That statute provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Key relies on Smith v. United States, 551 F.2d 1193 (10th Cir. 1977), however, to support his proposition that the sole purpose of section 3661 is to allow courts to consider criminal acts not resulting in conviction when imposing sentence. Although Smith does state that the legislative purpose behind the passage of section 3661 was to "authorize the trial judge to rely upon information of alleged criminal activity," the case does not indicate that this is the *only* function of the statute. See id. at 1196.

Rather, section 3661 has been interpreted to allow judges to consider both non-convicted criminal activity and a wide range of other factors in imposing sentences on criminal defendants. See United States v. Garcia, 725 F.2d 52 (6th Cir. 1984) (per curiam) (victim impact letters); see also United States v. Arce, 118 F.3d 335 (5th Cir. 1997) (non-criminal conduct); United States v. Lee, 540 F.2d 1205 (4th Cir. 1976) (illegally obtained evidence). Key's effort to limit judicial discretion in sentencing to the consideration of criminal background is contrary to the statute (which – as previously noted – authorizes broad inquiry into the defendant's background, character, and conduct), to the holdings of the circuit courts, and to the United States Supreme Court's language in Tucker, 404 U.S. at 446 (stating that in imposing a sentence, a federal district "judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come"). In this case, the sentencing court had discretion to consider Key's character, including what the judge may have perceived to be his youthful impetuosity. Key's claim that the district court's actions exceeded the scope of the discretion authorized under section 3661 is inaccurate and simply does not present a basis for overturning the district court's sentencing order.

In arguing that his sentence was imposed based upon an impermissible factor, namely the district court's use of materially untrue facts in his sentencing, the defendant indirectly raises a question of substantive reasonableness. See United States v. Bailey, 488 F.3d 363, 368 (6th Cir. 2007). Although not asked outright to engage in review under Booker, we conclude that such a review is advisable.

In United States v. Bostic, we directed district courts to ask parties if they have any objections following the pronouncement of a sentence but prior to adjourning the hearing. See 371 F.3d 865, 872 (6th Cir. 2004). "However, when the district court asks at sentencing whether there are any objections to the sentence and the appellant raises none, we review the sentence only for plain error." Bailey, 488 F.3d at 367 (citing United States v. Clark, 469 F.3d 568, 570 (6th Cir. 2006)). The sentencing court in this matter fulfilled its obligation under Bostic, and neither party registered an objection. As a result, the plain error standard applies here.[1]

A determination of reasonableness requires a two-part inquiry involving both substantive and procedural elements. See United States v. Blackwell, 459 F.3d 739, 773 (6th Cir. 2006) (citing Webb, 403 F.3d at 383). A sentence will be considered procedurally unreasonable when "the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." Webb, 403 F.3d at 383 (footnote and internal citations omitted). Substantive unreasonableness results when the district court "select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent

---

[1]Plain error occurs when there is "(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Webb, 403 F.3d 373, 380 (6th Cir. 2005) (internal quotation marks and citation omitted, alterations in the original).

§ 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." Collington, 461 F.3d at 808 (alterations in the original) (citing Webb, 403 F.3d at 385). Because Key's sentence of 96 months falls within the advisory guidelines range of 77- 96 months, we credit it "with a rebuttable presumption of reasonableness." United States v. Williams, 436 F.3d 706, 708 (6th Cir. 2006).

Here, there is nothing in the record to indicate that Key's sentence was procedurally unreasonable, causing us to focus on the substantive reasonableness of his sentence. Key contends that the sentencing court's attribution of his immaturity to the state of his hormones introduced "false evidence" into the sentencing decision, which he indicates is an impermissible factor on which to base a sentence. To qualify as substantively unreasonable, Key must show that the district court's statements constitute an impermissible factor and that the court relied upon the statements. If such an error is present, we will then analyze it under the plain error test to determine whether the defendant's claim merits relief.

18 U.S.C. § 3553(a) lists factors for district courts to consider when imposing sentences. In relevant part, section 3553(a) provides that the district court "shall consider . . . the history and characteristics of the defendant." We have previously held that a factor is not impermissible when it is couched in the terms of section 3553(a). See Collington, 461 F.3d at 810. When considered in context, the judge's comments in this case regarding the reason for Key's continued criminality appear to be offered as an analysis of the

defendant's history and characteristics, consistent with the language of section 3553(a). By discussing Key's drug addiction and immaturity, the sentencing court was discharging its duty to consider fully the section 3553(a) factors.

Additionally, the record is clear that the district judge did not introduce the topic of Key's immaturity on his own but in response to Key's argument for leniency in sentencing. In Key's request for a lower sentence, he asserted that he had "grown to become a much . . . wiser individual whose desires in life are not the same as when I was young." The district court complimented Key on his obvious intelligence but rejected his claim of maturity, explaining the basis of this rejection at least in part by discussing drug addiction and hormones as possible causes of Key's continued impetuosity. Hence, describing the sentencing court's response as reliance upon impermissible factors in sentencing mischaracterizes the situation in which the court merely attempted to fulfill its sentencing responsibilities by explaining its basis for rejecting Key's argument.

Thus, when reviewed in context, the district court's statements do not appear to qualify as impermissible factors in the defendant's sentencing. Even if we were to conclude that the statements were based upon impermissible factors, the record does not establish that the district court actually relied upon those statements in imposing Key's sentence. Because Key has not shown that there were impermissible elements relied upon in his sentencing and because the record does not support any other bases for

finding substantive unreasonableness, Key has not established the first prong of the plain error review. Without showing error, Key cannot prevail on his claim.

Furthermore, even if we were to assume that the defendant could prevail on the first two prongs of the plain error analysis, he has not shown that the error affected his substantial rights. He offers no evidence that the district court, but for its statements regarding his hormones, would have imposed a lesser sentence. Instead, the record suggests that the court was considering an upward departure from the sentencing guidelines range of 77-96 months and that the statements of the defense counsel and Key were sufficient to convince the court to impose a sentence within the guidelines range, contrary to its initial intent. The district judge's disputed comments therefore did not affect Key's substantial rights by leading to the imposition of a more severe sentence.

## CONCLUSION

Because we conclude that Key's sentence was not imposed in violation of his due process rights and was not unreasonable, we AFFIRM the district court's sentencing order.